**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>v.<br><br>SESLEY WILLIAMS,<br><br>    Defendant | Case No.: 2:13-cr-00221-APG-CWH<br><br>**Order Granting Motion for Compassionate Release**<br><br>[ECF Nos. 311, 313] |

I sentenced defendant Sesley Williams to 121 years in prison for being the getaway driver in a string of armed robberies. The bulk (107 years) of her lengthy sentence is due to the mandatory minimum sentence for five gun charges under 18 U.S.C. § 924(c), even though she did not brandish a weapon herself.

After serving eight years in prison, Ms. Williams now moves for compassionate release under 18 U.S.C. § 3582(c). ECF No. 313. The Government opposes. Because Ms. Williams has demonstrated extraordinary and compelling reasons for compassionate release, I grant her motion.

**I.     BACKGROUND AND PROCEDURAL POSTURE**

Ms. Williams and her co-defendant Anthony Jordan were convicted of multiple crimes related to a string of armed robberies. ECF No. 213. Marquee Munnerlyn went into the establishments to commit the robberies, Ms. Williams drove the getaway car, and Mr. Jordan served as the lookout. Five of Ms. Williams' counts of conviction were gun charges under 18 U.S.C. § 924(c) because Mr. Munnerlyn brandished a gun during some of the robberies. In January 2016, I sentenced Ms. Williams to 168 months for the robbery charges and 1284 months,

consecutive, for the gun counts under 18 U.S.C. § 924(c). *Id.* The sentence was so long because of the mandatory length and consecutive nature of sentencing under § 924(c).

Subsequent to Ms. Williams' conviction, Congress passed and the President signed the First Step Act of 2018.[1] That statute allows inmates to move for compassionate release after petitioning their warden.[2] Important here, the First Step Act also eliminates the 25-year mandatory minimum sentence under § 924(c) unless the defendant has a prior § 924(c) conviction from a separate case. Had Ms. Williams been sentenced under this new version of § 924(c), her mandatory minimum sentence for the gun crimes would have been 35 years (seven years for each of five charges), instead of the 107 years she received for those crimes.

Ms. Williams moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 313. She contends that reduction of the § 924(c) mandatory minimum sentence under the First Step Act, combined with her significant health issues, justify her immediate release.

## II. ANALYSIS

### A. <u>I have jurisdiction to consider Ms. Williams' motion.</u>

The Government first argues that I lack jurisdiction to consider Ms. Williams' motion because her direct appeal of her convictions is pending at the Ninth Circuit. ECF No. 319 at 4. I disagree.

"The filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). This "notion that a pending appeal strips the trial court of jurisdiction is a judicially-crafted rule designed to avoid confusion or waste of time resulting

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[2] The Government agrees Ms. Williams has satisfied this administrative prerequisite to filing her motion. ECF No. 319 at 10.

from having the same issues before two courts at the same time." *See United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009) (internal quotations and citation omitted). Thus, divestment of jurisdiction "does not apply to collateral matters not affecting the questions presented on appeal." *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).

Ms. Williams' appeal does not present the question of compassionate release. Thus, the same issue is not before two courts and there will be no confusion or waste of time from my addressing her motion for compassionate release. The appeal does not divest me of jurisdiction over her motion.

### B. Compassionate release is justified.

The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i) allows me to modify a sentence if "extraordinary and compelling reasons warrant" it. I must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

#### 1. The Sentencing Commission's policy statements do not preclude compassionate release.

The Government contends that the Sentencing Commission's policy statements—particularly U.S.S.G. § 1B1.13 and Application Note 1—do not include as a reason to grant compassionate release a "concern about the length of a previously imposed sentence." ECF No. 319 at 8. Thus, according to the Government, because those "policy statements are binding on courts," I cannot grant compassionate release based on the reduction of the § 924(c) mandatory minimum sentence. *Id*.

The Ninth Circuit recently rejected that argument, holding "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (alteration in original). That guideline section "may inform" my discretion, but it is not binding on me. *Id*. Thus, the Sentencing Commission's policy statements do not preclude compassionate release here.

### 2. **There are extraordinary and compelling reasons to grant compassionate release.**

Although the First Step Act eliminated § 924(c)'s mandatory 25-year minimum sentence in cases like this, Congress did not make that change retroactive. The Government therefore argues that reducing Ms. Williams' sentence would improperly give retroactive effect where Congress expressly declined to. ECF No. 319 at 10. But numerous courts have held that this lack of retroactivity does not bar judges from making an individualized assessment of a defendant's eligibility for compassionate release. "The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." *United States v. McCoy*, 981 F.3d 271, 286-87 (4th Cir. 2020). The Fourth Circuit recognized that not all § 924(c) defendants are entitled to be resentenced, but courts have the authority to "relieve some defendants of those sentences on a case-by-case basis." *Id*. at 287 (internal quotations and citation omitted).

"Many district courts across the country have . . . concluded that a defendant's excessive sentence because of mandatory-minimum sentences since mitigated by the First Step Act may, alongside other factors, justify compassionate release." *United States v. Owens*, 996 F.3d 755,

762 (6th Cir. 2021) (collecting cases); *see also United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (holding that a pre-First Step Act mandatory sentence "cannot, standing alone, serve as the basis for a sentence reduction . . . [but] the combination of such a sentence and a defendant's unique circumstances that constitute extraordinary and compelling reasons" can) (internal quotations and citations omitted). Although the Ninth Circuit has not yet directly addressed this issue, it has cited with approval *McCoy*, *McGee*, *Owens*, and other "sister circuits" that have held similarly. *Aruda*, 993 F.3d at 801. Many of those courts include in their analysis the defendant's health and age, rehabilitation efforts, and the disparity between the actual sentence and the sentence the defendant would have received if sentenced today. *Owens*, 996 F.3d at 762 (collecting cases).

Ms. Williams is obese and suffers from several other health issues, including hypertension, heart problems, peripheral neuropathy, osteoarthritis, and malabsorption syndrome. ECF No. 313 at 18-19. While in prison, she contracted COVID-19 and still suffers its lingering effects. The Government concedes that Ms. Williams "satisfies the 'extraordinary and compelling reasons' prong of the test for compassionate release." ECF No. 319 at 10. I agree, especially considering these factors and the extreme length of her 107-year sentence compared to the sentence called for under § 924(c) today. Ms. Williams is entitled to a compassionate modification of her sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### 3. The applicable factors under 18 U.S.C. § 3553(a) warrant a reduction of Ms. Williams' sentence.

When deciding how to modify Ms. Williams' sentence, I must consider the factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C.

§ 3553(a)(1). Also, the sentence I impose must reflect the seriousness of the crime, promote respect for the law, provide just punishment, deter future crimes, protect the public, provide needed education or training, and avoid sentencing disparities. *Id.* Those factors favor a significant reduction of Ms. Williams' sentence.

Ms. Williams was the getaway driver in several armed robberies. She did not enter any of the locations and she did not personally brandish a gun. Fortunately, no one was injured during any of the robberies. These are serious felonies warranting punishment, but not a virtual life sentence.

Ms. Williams is a 53-year-old single mother of four children with six grandchildren. The Presentence Investigation Report shows her prior criminal history consists of misdemeanors and one felony check scheme in 2003 for which she was sentenced to one day in custody. Although she has not been a model citizen, her criminal history is not significant. She has been in custody for over eight years. During that time, she has completed approximately 55 programs and classes, and she will soon obtain a college degree. ECF Nos. 311-2 through 311-4. She has a good disciplinary record in prison, and the Bureau of Prisons rates her as a "minimum" risk of recidivism. ECF No. 311-2.

In the few years before committing these crimes, Ms. Williams had been subject to domestic violence by her then-boyfriend and partner-in-crime Mr. Munnerlyn, including serious beatings and sexual assaults on several occasions. *See, e.g.*, ECF No. 321-1 (compiling police reports). This may have contributed to her participating in these robberies with Mr. Munnerlyn.

With regard to these robberies, Mr. Munnerlyn admitted to being the triggerman in approximately 20 of them. He told the FBI that Ms. Williams was the getaway driver and Mr. Jordan was the lookout. He pleaded guilty to only three robberies under a plea agreement that

called for 17 years in prison. *See* Plea Agreement, Case No. 2:13-cr-00328-HDM-GWF, ECF No. 32.  Notably, he was not charged with any gun crimes under § 924(c) even though he admitted to using a gun during many of the robberies.

Before he was sentenced, Mr. Munnerlyn recanted part of his story, claimed he had lied to the FBI, and stated that Ms. Williams had no knowledge of or role in the robberies. *See* Transcript of Sentencing, Case No. 2:13-cr-00328-HDM-GWF, ECF No. 74 at 3-8.  Because of that, the Government asked the sentencing judge to deny Mr. Munnerlyn a sentence reduction for acceptance of responsibility and instead impose a longer term. *Id.*  Mr. Munnerlyn was sentenced to 20 years in prison. *See* Judgment, Case No. 2:13-cr-00328-HDM-GWF, ECF No. 58.  He later retracted his earlier retraction and testified at Ms. Williams' trial that she was the getaway driver.  He admitted to several other lies, including while testifying at Ms. Williams' trial.

One of the factors I must consider is sentencing disparity. 18 U.S.C. § 3553(a)(6).  I may consider the sentence Ms. Williams and other similarly situated defendants would receive for these crimes today.  The First Step Act eliminated the 25-year mandatory minimum for cases like this, so Ms. Williams would face a statutory minimum of 35 years, rather than the 107 years she received.  Even more on point, the treatment Mr. Munnerlyn received from the Government and the sentence imposed on him are illuminating when compared to Ms. Williams' sentence.  He was the admitted triggerman in approximately 20 robberies, pointing the gun at bank tellers and other victims.  Nevertheless, the Government did not require him to plead guilty to even one § 924(c) gun crime, and it recommended a 17-year sentence (before he recanted his story).  The disparity of treatment between Mr. Munnerlyn and Ms. Williams, especially considering their respective roles, is stark and strongly favors a significantly reduced sentence for Ms. Williams.

It appears doubtful that a lengthy sentence like this has much of a deterrent effect on the public. According to the Justice Department, "[r]esearch shows clearly that the chance of being caught is a vastly more effective deterrent than even draconian punishment." National Institute of Justice, *Five Things About Deterrence* (May 2016); *see also* Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project, at 1 (Nov. 2010) ("Research to date generally indicates that increases in the certainty of punishment, as opposed to the severity of punishment, are more likely to produce deterrent benefits."). *But see Length of Incarceration and Recidivism*, United States Sentencing Commission, at 4 (April 2020) ("offenders incarcerated for more than 120 months were less likely to recidivate eight years after release").

On the other hand, a sentence of over 100 years in a case like this undercuts, rather than promotes, respect for the law. Ms. Williams' sentence is five times longer than the average sentence for murder and decades longer than the average sentences for kidnapping, manslaughter, and other serious crimes. *McCoy*, 981 F.3d at 285. A life sentence signifies that a defendant is entirely beyond rehabilitation, can contribute nothing to society, and is worthy only of warehousing. That is not the case for Ms. Williams, so that outcome in this case engenders derision for the criminal justice system.

Ms. Williams has served over eight years in custody. An additional five years of home detention on supervised release will result in over 13 years without freedom. Given the sentence imposed on Mr. Munnerlyn, Ms. Williams' personal history and characteristics, and the other factors discussed above, that is sufficient but not greater than necessary to serve the interests of justice and comply with the purposes of sentencing. Under 18 U.S.C. § 3582(c)(1)(A)(i), I will

reduce Ms. Williams' custodial sentence to time served and I will modify the conditions of her supervised release to include 60 months of home confinement, as described below.

### III.   CONCLUSION

I THEREFORE ORDER that defendant Sesley Williams' motion for compassionate release **(ECF Nos. 311, 313) is granted.**  Her previously imposed sentence of imprisonment of 1452 months is reduced to time served.

I FURTHER ORDER that this order is stayed for up to 14 days for the verification of Ms. Williams' residence and establishment of a release plan, to make appropriate travel arrangements, to quarantine her to prevent the spread of COVID-19, and to ensure her safe release.  Ms. Williams shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for her to travel.  There is to be no delay in ensuring travel arrangements are made.  If more than 14 days are needed to make appropriate travel arrangements and ensure her safe release, the parties shall immediately notify me and show cause why the stay should be extended.

I FURTHER ORDER Ms. Williams to provide to the Probation Office in the district where she will be released the complete address where she will reside upon release because it was not included in her motion.

I FURTHER ORDER that Ms. Williams' previously imposed conditions of supervised release shall remain the same, but with the addition of the following condition:

> **Home Confinement with Location Monitoring** – For up to 1825 days (5 years), you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the

Probation Officer. You will be monitored by the location monitoring technology that the Probation Office determines to be appropriate. You must follow the rules and regulations of the location monitoring program. You must pay the costs of the program based upon your ability to do so as determined by the Probation Office.

The release conditions I previously ordered, along with the new condition of home detention, are reasonably related to the goals of deterrence, protection of the public, and Ms. Williams' rehabilitation; they involve no greater deprivation of liberty than is reasonably necessary to achieve those goals; and they are consistent with the pertinent policy statements of the Sentencing Commission. 18 U.S.C. § 3583(d).

DATED this 13th day of August, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE